The fourth case, Port-A-Latin v. Blatt, Hazen, Miller, Lipsker, and Moore will be submitted for decision on the briefs in the record. And we'll proceed to the fifth case, the United States v. Bethea. Mr. Hills. Good morning. May it please the court, counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office for the Central District of Illinois, and I represent Mr. Bethea in this case. He asked this court to vacate his conviction and sentence because he was not physically present. What's his physical condition at the moment? He's out of mind, isn't he? He is undergoing medical treatment. Is he under hospice yet, or is he... Not hospice, but he is in very bad shape. As I laid out in the brief, he has a team of doctors who are attending to his medical needs. How long ago was the sentence? How long ago? I think it was in February, Judge. It was not that long ago. We tried to get the briefing to all of you quickly, and we appreciate the expedited appeal. Yes. So with that... If you had not expedited it, you could have kept him on bond for longer, but go ahead. Yes, and he'd continue to get the care, etc., but we'd be postponing the inevitable. He recognizes that his day in court will come, but it should come with his physical presence. So that's the crux of what we're here for. I think he wants it to come postmortem. We wouldn't mind putting this off, more or less indefinitely, but I don't think that's in the court's interest or the interest of justice, so we accept that. As for what is required by the Federal Rule of Criminal Procedure 43A requires presence. All of the case law, including this court's case and Miranda's so long ago, interprets that to mean physical presence, and that's not in dispute here. So what we need to first address, I think, is whether physical presence can be waived, and it can, but only under very specific circumstances. And that is if a person is disruptive, and therefore absents himself from a criminal proceeding, or if they abscond. He's not in custody, right? He's not. Yeah, well, I mean, he's, I don't want to say he's, I know, if he's doing ten and a half hours of kidney dialysis every day, he's kind of in custody, but other than that, he's not in prison. I can understand if somebody's in prison and handcuffed and some other things, where they may be arguing about presence, but when somebody is out there, it's in his best interest not to be present, frankly. Physically and who knows what else. Sure, and if there was a Rule 20 transfer, like the parties asked for, the physical presence issue would not have come about like this. He was able to appear in court in Milwaukee. He just couldn't travel up to Madison. And the genesis for the whole problem on this, incidentally, because this goes to the invited error argument by the government. The government suggested that the defense ask the court if he could appear by video, and they said they wouldn't oppose if he was allowed to do that. But the problem is you can't do that. It is a requirement under Rule 43A, and less 43C, says you're disruptive or you've absconded. You have to be physically present. There's no other way about it. And so he wasn't, and that is the problem here. And insofar as- I suppose it would have been possible for the court to adjourn to the hospital room and conduct the proceedings there. I think a court is where the robe is, Judge, so yes. So that would be more appropriate. Yes. Yeah, okay. So there are lots of ways to get physical presence. The Rule 20 transfer, the presence of the judge in a proceeding somewhere outside of the bricks of the courthouse, that's all fine. But the defendant has to be there in person with the judge. And we rely on Torres-Palma for that point. And before I get there, if the court has questions about invited error, I really want to make certain I address that. Because the government is trying to create a third category of waiver here, which is inconsistent with what the rule requires under Rule 43. And furthermore, it would be inconsistent with due process. Fundamentally, people have to be in court with the judge for valid proceedings. Why? It's a matter that goes back to the common law. I don't doubt it's a common law. Okay. Does it make sense? It does. A dying man has to be hauled into court and sentenced? Right. And so we could make accommodations if we were inventive and wanted to do that. But this isn't an acceptable accommodation. The accommodation would have to be consistent with what the law would require. So there are ways to do it. I certainly know your point. Thank you. So on to the remaining parts of this. The government, we believe that it's per se prejudicial under the law. Torres-Palma talks about that. They cite a case from the First Circuit. The Torres-Palma case is citing the First Circuit's opinion in Mojica-Payez, which says that a defendant needn't show prejudice. It's per se. And that, I think, is correctly reasoned. And even the concurrence, Judge Henry says that harmless error analysis doesn't apply. The government says that you should have to show harm. And if we did have to show it, we can. Because if the requirements for a valid proceeding for the exercise of your substantial rights, your substantial rights would include physical presence under the Sixth Amendment. So he wasn't present. There's a violation of his substantive rights. There's also a violation of the rule, Rule 43A. So we would have that established here if this Court would determine plain error needs to be established. But also, as to the fourth factor, we'd rely by analogy on this Court's opinion in the United States v. Thompson, which was a revocation proceeding. But it's important because you have a denigrated set of rights relatively, a lessened set of rights in revocation proceedings. And if you can show plain error there under all four factors, the fourth factor is certainly shown here under the similar context where there's a criminal sentencing that you would have more rights than you would vis-a-vis the revocation proceedings that was discussed in Thompson. So unless the Court has questions on that, I'd like to move to what may be a moot point on the sentencing issue. If we were to prevail, of course, on the Rule 43 issue, the Court wouldn't need to reach. The claims that we make about error at sentencing hearing, but I do want to address those. What would have to be resentenced then? He would. He'd have to, the judge, he would have to go back for a new plea or trial, and then following that, the sentencing hearing. Because right now we have an invalid conviction because of the lack of physical presence. He could plead before a different judge, too. He could, right. Again, the defense was receptive before to the idea of a Rule 20 transfer, which would accomplish that exactly. So as for the sentencing issues, Mr. Bethea was given a 21-month sentence. The judge then spoke of a 24-month sentence. The defense got the judge's attention and asked the judge if he meant 24 or 21. The judge said 21 and explained what the reasons were. The government's taking the position, and it's a very cribbed, or excuse me, a very tight reading of what the remarks were at the sentencing, and it's interesting to say that once the judge said 21, everything that he explained after is immaterial to the judge's reason for the imposition sentence, but that's not correct because if you read the transcripts, it shows once the judge was correcting his error, he was giving a more fulsome explanation for the reasons of his sentence, which is required, and the judge was trying to satisfy the requirements of the sentencing. The problem is that when he was doing that, he made some remarks that I think are unfortunate ones. The judge said that he was not convinced that my client would get wholly inadequate care in prison, and that is a low bar, and that is not the right standard. If you're going to get wholly inadequate care, don't send him to prison because prisons have to give at least adequate care, so that's one part of this. Well, that was just an error then. It was an error by the judge to say that. He probably could get better care in prison. No, I don't think so, not based on what he's been getting outside of prison. See, that's what's confusing because whatever he's getting outside, I don't know. Maybe he's under some kind of a government benefit where he's getting first class somebody else paying for. He is. Yeah, all right. But that's better than the rather . . . Yeah, that's probably right, unless they're sending him to the same place if he's in prison because you've got to get that dialysis for 10 and a half hours a day. Do you know where he's being held? Well, he's not being held yet, so he's getting treated. Are there hospitals to which he could be sentenced? Well, he could go to the Federal Medical Center in Rochester or places like that, but I don't think any of us would choose to get medical treatment in the Bureau of Prisons no matter how good it might be or they say it is. I prefer to get my medical treatment freely. I prefer not to be in prison at all. I'm with you, Judge. So anyway, it was a statement that shouldn't have been made. Wholly inadequate care is not the right standard, and adequate care is he's getting better care than he would get if he's in prison. But there's another thing that the judge said that I need to briefly remark on, and that is the judge said Mr. Bethea's inability to afford outstanding care was a concern as well. But addressing that, as the judge did, it invites a problem here because it's an invidious form of discrimination to consider somebody's wealth as a proxy for sentencing. The judge should not have said that. Mr. Hillis, if you've got a judge committed to a custodial sentence, and I appreciate your view of the editorializing by the judge here, but if we have a judge appropriately considering a custodial sentence, to reference that contrast that you will get care, acknowledging it's not Mayo or a Cleveland clinic, seems to me not a really wayward remark. It all depends on what you say for how wayward it might be. And here, the judge, by couching it as he did, in terms of wholly inadequate, in terms of the relative wealth disparity, that's the problem. The judge could have said things to get to the same point without incorporating wealth and the standard of care that he did. That's the problem. Was the care provided in this case evident in the record? And could one make an observation that that was top-flight care? I don't know. I don't think so. There was every suggestion that it was very good care provided by a team of doctors and that it was going to be disruptive to his continuity of care and therefore pose a health and life risk. Was it in the hospital or did they? Outpatient. Outpatient. Yes. From home. So if a judge has a situation like this with a custodial sentence in mind, you're suggesting it would be appropriate to say nothing. I'm suggesting you should say things that don't then go into improper criteria. Saying nothing, no. He has to give an adequate explanation. If he hadn't said anything and just gave the custodial sentence. That would be a problem. Right? He has to give an adequate statement of reasons, so that would be a problem. I understand. Okay. Thank you. Thank you, Mr. Hillis. Ms. Flugert. Thank you, Mr. Clerk. Good morning. My name is Julie Flugert. I represent the United States Government from the Western District of Wisconsin. I did want to touch first on the invited error argument that Mr. Hillis alluded to. This case, the government did send an email to public defender Kelly Welsh in an attempt to try to accommodate a very sick defendant. We sent an email. I sent an email saying, why don't you look into the possibility of a video conference? Because it was clear that Mr. Bethea was very sick, and we were trying to do the right thing. No good deed ever goes unpunished. True. And so then Ms. Welsh emailed me back and said, you know, I think that might be a violation of the rules, and I don't know if that's appropriate. And then she emailed me back a week later saying it's all arranged. I've set it up with the court. So while Mr. Hillis states that it is I who invited the error, I disagree. While I did send that initial email, that triggered nothing in the court. What triggered the court process is Ms. Welsh contacted the court in arranging this. Now, in Mr. Hillis' response brief, he says that, you know, we cited the Brunner case out of the Eastern District of Wisconsin where the Federal Public Defender's Office had represented a defendant with this exact issue. And he said, well, look, the United States Attorney's Office in the Eastern District of Michigan was aware that this was against the rules, so therefore the Western District must have been aware. And I take issue with that. If I had or our office had been aware, we wouldn't have suggested this. What I do suggest is that the Federal Public Defender's Office, it seems hard to believe that they weren't aware. They had already represented a client a year ago with this same issue. Then after the judgment of conviction came down, the next day they filed a notice of appeal saying we are appealing because, quote, Now, Mr. Hillis' brief said, well, Mr. Bugney is the one who represented the defendant in the Eastern District, and he's not the one who represented Mr. Bethea. But Mr. Bugney was in court when Mr. Bethea's plea in sentencing. He was in the Western District with me and the judge, while Kelly Welsh, the other Federal Public Defender, was in court in Milwaukee. So to say that Mr. Bugney was not representing is just not factually adequate. He made the first statement for defending. He made the closing statement for defending. He was very active in this procedure. So the government believes that the Federal Public Defender's Office have invited this error. The reason we are here today is because Mr. Bethea doesn't like the sentence that he got. Really, that's the bottom line. If he would have got no custodial sentence, we wouldn't be here. We were all on board. We all wanted this. We all wanted to help a sick man, and we did the best we could. Unfortunately, I didn't realize it was a violation of the Federal Rules of Criminal Procedure. And so now, but it seems from the record that the Public Defender's Office may have realized it was a violation, and they laid in the weeds until they got a sentence they didn't like, and now we're here. So that's my invited error. There's case law showing that when you invite error, you waive this issue, and there is no review. So the government puts forth that this should not even be reviewed by this court. Secondly, the per se argument that Mr. Hillis says, that this is a per se violation and therefore should be remanded, he relies on Torres-Palma out of the Tenth Circuit, but he doesn't look at Benabeyad when this court specifically said there's no per se error on Rule 43 violation. So if you look at this court's own holding, that goes against what Mr. Hillis is arguing. Which case is that? Benabey. That is, I have it here. In Benabey, this court said there is no reason to expand the limited list of structural rights whose violation constitutes per se error by adding Rule 43 to that list. And this court found it was not a per se error. So then we move on to plain error. So then we get to the four parts of plain error. Was there an error? Is it clear and obvious? Yes, we've already admitted that. Did it affect the district court proceedings? Meaning, was it prejudicial? Or is there a reasonable probability that the error affected the outcome? And that is the defendant's burden to show under plain error. Then you look at, did it impugn the fairness, reputation, or integrity of the judicial proceedings? That also the defendant must show. And the government submits that defense just hasn't shown that. Now, if the court disagrees, this case is remanded and we'll redo this again. But we just believe that they haven't shown the error. The judge gave his reasons for the sentence, and there's no reason to believe that it would have been different had Mr. Bethea been in court. While we do recognize that that is what you're supposed to do under the federal rules of criminal procedure, and we won't make this mistake again. Wouldn't you say the body of law, though, in the other circuits is a per se rule? I'm sorry, I didn't. Wouldn't you say the body of law that exists in the other circuits are for a per se rule? I would say under Torres-Palmas that appears, but under the Seventh Circuit that we're in, I don't think that is the body of law that we follow. I think that if that's what this court finds, again, we will redo this, and this time Mr. Bethea will be coming to Madison and he will make that trip that will be really hard on him. Why wouldn't you just have a judge in the Eastern District sentence? That was a decision that was out of my control, that was in the management, and that was not approved. I'm not suggesting that it would be your call, but it seems to me a reasonable way to address a police situation with this setting. That may be one solution, but that just was not approved in this case, and I can't say that it would be approved in the future. So what I believe would happen is that we would redo this, and that he would be forced to travel to Madison, which is what we were all trying to avoid. As far as the sentencing argument, as far as the judge making incorrect comments, I think it's clear from the record that Judge Peterson really did consider Mr. Bethea's health. I mean, he went over it and he said, I recognize this is a concern, but I have to sentence him to prison based on all the factors. He went over his health conditions. What he did say, Ms. Walsh, the public defenders, in their sentencing brief and in their argument, said repeatedly, look, sentencing him to prison is going to be a step back. It's going to be like starting over. He's not going to get any good care. He has this excellent care outside. He has these teams of doctors and cardiologists and ophthalmologists and all these teams. So when Judge Peterson said, you won't get wholly inadequate care, and I don't know how great your care is outside of prison, he is pretty much telling public defenders, I don't buy your argument. I don't buy your argument that he's going to be starting over from scratch, and it's going to be so horrible in prison, and he's getting this amazing care outside. He's commenting on an issue that they have brought up. And he says, I am putting you in a federal medical facility. I'm giving you 90 days to report instead of the usual 30. I'm going to take all of this into consideration to try to accommodate you so that you can get the best care that you will be able to receive while you're in custody. So to say that his comments were the basis for a sentence is just not accurate. They were a response to defense's arguments, and they were after he had already said, here's my sentence and here's why. And by the way, I don't buy your argument. Could you give me the name of that case again that you said that? Benabe. Yeah, but in Benabe, we suggested, did we not, that you can waive your absence at a sentencing if you're initially present at the trial or the plea. Well, we don't have that here. Right, but I don't think the facts... I mean, I don't see where Benabe precludes a per se rule or establishes a per se rule in the Seventh Circuit. I understand that the facts of Benabe are different, right? Well, that's critical, it seems to me. The facts are different, but the holding says that the court does not require automatic reversal for a violation of Federal Rule of Criminal Procedure 43 based on a defendant's absence. That's the holding, and it doesn't qualify it to say only in this case. Well, let me direct your attention to 43's amendment in 2011, where it specifically, Ms. Fluger, mentions the use of videoconferencing. And it says a defendant need not be present under any of the following circumstances. And then it says misdemeanor or offense or an offense punishable by a fine or imprisonment and not more than a year or both. The drafters had an opportunity just six or seven years ago to easily include our situation. And that it spoke to, obviously, a lesser's charge does seem to suggest that to the extent one can, I think, reasonably read into it, that that was an opportunity in this world of videoconferencing to include our situation. And I just don't see that. That probably would have made all of our lives much easier. I appreciate your point, Your Honor. We were just relying on the case law, and I see that my time is up. All right. Thank you. Thank you, Ms. Fluger. Mr. Hillis. Your Honor, I just heard the government explain that there was a sequence for the e-mails where they were suggesting something. The defense alerted them to the problem, and the government chose to go forward. That's a problem for the government, and that's exactly what happened here. So to claim invited error under those circumstances is not correct. Also, the government cites no case where invited error was accepted. For all the cases where we have these types of errors, invited error has never carried the day. I'm not certain that it was argued in any of those cases, but you'd think that it would. And if it had a place in the analysis, it would have knocked this out of the box, and yet it didn't. As for Rule 43 and what it says, Banabi talks about Rule 43C, not Rule 43A, and there's a world of difference between those provisions. And then, furthermore, to your point about what did Congress know and when did it know it and what could it do differently, Rule 5 and Rule 10 have videoconferencing provisions, and so if we look at the efforts as a whole by Congress, as we should, we see here then that they deliberately did not include the circumstance which does suggest that Your Honor's point is correct, insofar as we can discern from the case law and the rules that it is a per se violation. So for all of those reasons, we would ask this case to vacate the conviction, and therefore the sentence remand for additional proceedings.  Thank you, Mr. Hillis. Thank you, Ms. Fluger. The case is taken under advisement.